IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02185-RM-CBS

ABEER HUMOOD,
     Plaintiff,
v.

The CITY OF AURORA, COLORADO,
WILKINSON (Officer #256460, an individual;
JASON CONDREAY, an individual;
PONICH (Officer #256460), an individual;
KEN SULLIVAN, in his official capacity as a member of the Civil Service Commission in the City of Aurora;
DEB WALLACE, in her official capacity as a member of the Civil Service Commission in the City of Aurora;
BERNARD CELESTIN, in his official capacity as a member of the Civil Service Commission in the City of Aurora;
SANDRA SWEENEY, in her official capacity as a member of the Civil Service Commission in the City of Aurora; and
DAVE WILLIAMS, in his official capacity as a member of the Civil Service Commission in the City of Aurora;
     Defendants.

---

**RECOMMENDATION REGARDING DEFENDANTS'
MOTIONS TO DISMISS**

---

Magistrate Judge Shaffer

     Pending before this court are motions to dismiss (doc. nos. 28, 31 and 32) filed by

Defendants City of Aurora, Douglas Wilkinson, Jason Condreay, Peter Ponich (collectively the

"Defendant Officers"), Ken Sullivan, Deb Wallace, Bernard Celestin, Sandra Sweeney and Dave

Williams (collectively the "Defendant Commissioners").  The *pro se* Plaintiff, Abeer Humood, filed

a consolidated Memorandum of Law in Opposition (doc. no. 37) to these motions, which was

followed by separate Reply briefs (doc. nos. 38, 39 and 40) on behalf of the moving parties.  By

Order of Reference, dated May 24, 2013, this case was referred to the Magistrate Judge to, *inter*

1

*alia*, "conduct hearings, including evidentiary hearings, and submit proposed findings of fact and recommendations for rulings on dispositive motions." *See* doc. no. 42.  The pending motions addressed in this Recommendation were referred to the Magistrate Judge by separate memorandum (doc. no. 51) on February 28, 2014.  The court has reviewed the pending motions and related briefing, the entire case file, and the applicable law, and is sufficiently advised in the premises.  The court does not believe that oral argument would assist its evaluation of the arguments raised in the parties' briefs.  For the following reasons, I am recommending that Plaintiff's Amended Complaint be dismissed without prejudice, but that Mr. Humood be granted leave to file a second amended complaint.

## PROCEDURAL BACKGROUND

Mr. Humood commenced this action on August 17, 2012 with the filing of his original Complaint and attached exhibit, along with a Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915.  In compliance with an Order entered by Magistrate Judge Boyd Boland, Mr. Humood filed an Amended Complaint (doc. no. 9) on October 4, 2012, which remains the operative pleading in this case.  The Amended Complaint asserts eight claims for relief and names as defendants the City of Aurora, [Douglas] Wilkinson ("Officer #256460"), Jason Condreay, and [Peter] Ponich ("Officer #301367"), in their individual and official capacities, as well as Ken Sullivan, Deb Wallace, Bernard Celestin, Sandra Sweeney and Dave Williams in their official capacities as members of the Civil Service Commission for the City of Aurora.

Plaintiff's claims and the instant lawsuit stem from Mr. Humood's arrest during the early morning hours of April 5, 2012.  According to the Amended Complaint, Mr. Humood drove two companions from the Stampede night club in Plaintiff' car.  *See* Amended Complaint, at ¶¶ 10-11.  Shortly after leaving the night club, Defendant Wilkinson stopped Plaintiff's car and instructed Mr.

2

Humood to exit the vehicle. *Id.* at ¶ 14. Mr. Humood told Officer Wilkinson that he was from Iraq and did not speak English. *Id.* at ¶ 15. At some point, "Defendant Ponich brought Defendant Jason Condreay to the scene." *Id.* at ¶ 16. The Amended Complaint alleges that Defendant Wilkinson asked Plaintiff "how many drinks" he had that night, but Mr. Humood responded that he didn't "understand" the question. *Id.* at ¶ 18. One of Mr. Humood's companions told the officers that Plaintiff was taking prescription drug for anxiety and reiterated that he did not speak English. *Id.* at ¶ 19. The Amended Complaint alleges that Defendant Wilkinson then handcuffed Mr. Humood, and "grabbed the skin of the plaintiff's right side of the neck and left shoulder forcefully." Defendants Wilkinson and Condreay "violently pushed the plaintiff to the inside of the police vehicle." *Id.* at ¶ 20. Mr. Humood further alleges that when he arrived at the police station, Defendant Wilkinson "grabbed the skin of [his] lower back." *Id.* at ¶ 21.

Plaintiff contends that he repeatedly asked for the services of an interpreter, but those requests were denied by Defendants Wilkinson and Condreay. *Id.* at ¶ 24. Mr. Humood claims that he "refused to submit to any kind of test or sign any document of which he [didn't] understand the content in English." *Id.* at ¶ 22. Plaintiff asked to be taken "to the hospital because of his deteriorated psychological and emotion state," and later asked jail personnel for his medication. *Id.* at ¶¶ 23 and 27. The Amended Complaint alleges that Plaintiff was "held in the jail on $1000 bond without access to medication and interpreting services." *Id.* at ¶ 28. According to Mr. Humood, "Defendants Jason Condreay and Wilkinson came to [his] cell and started mocking him." *Id.* at ¶ 26.

Based upon the foregoing factual allegations, Plaintiff asserts eight claims for relief that I must liberally construe. Mr. Humood's First Claim appears to assert a Fourth Amendment violation based upon "the Defendants'" excessive use of force by "intentional[ly] and forceful]ly]" grabbing

the skin on Plaintiff's neck, shoulder and lower back even though he was unarmed and posed no threat to the officers, and even though the officers had no lawful authority to arrest him.[1]  The Second Claim alleges that "the Defendants" intentionally discriminated against Mr. Humood in violation of Title VI, 42 U.S.C. §§ 20000d, *et seq*., by detaining, handcuffing, searching and interrogating him without the use of an Arabic interpreter, and by advising Plaintiff of his constitutional rights, if at all, only in the English language.  The Third Claim alleges a Fourth Amendment violation by "the Defendants" to the extent Mr. Humood was "detained, handcuffed, searched and interrogated without cause in that there was no reasonable suspicion or probable cause or lawful basis for Plaintiff's stop, detention, search and interrogation."

The Fourth Claim asserts that "the Defendants" committed an intentional assault and battery on the Plaintiff when he "was unarmed and did not pose a threat of injury to the Defendants or others."  This Claim further contends that Defendants acted "with willful and wanton indifference to and deliberate disregard for Plaintiff's life and rights," thus entitling Mr. Humood to exemplary damages.  The Fifth Claim alleges, in a single sentence, that the "Defendant police officers conspired to violate the Plaintiff's statutory civil rights . . . in violation of 42 U.S.C. § 1983."

The Six, Seventh and Eighth Claims are brought against the City of Aurora and the Defendant Commissioners.  The Sixth Claim alleges that these defendants "failed to train, supervise and discipline Defendant Police Officers Wilkinson, Jason Condreay and Ponich so as to prevent the unlawful behavior" of those officers.  The Seventh Claim asserts that "[i]t was the policy and

---

[1]Admittedly, the First Claim also contends that "the Defendants'"excessive use of force "constitutes assault and battery for which the Defendant police officers are individually liable." The latter allegation appears to duplicate the common law assault and battery claim asserted in Mr. Humood's Fourth Claim.  I will presume that Mr. Humood meant to assert constitutional and state law tort claims as alternative theories of recovery.

practice of the City of Aurora to authorize police officers, including the Defendant Officers named herein, to cover up the use of excessive force and unlawful detention of persons despite the lack of probable cause to arrest." The Seventh Claim also restates Mr. Humood's believe that the Civil Service Commission "refused and failed to adequately train, direct, supervise or control the Defendant police officers so as to prevent the violation of Plaintiff's constitutional rights." Finally, the Eighth Claim again alleges that the City of Aurora and the Civil Service Commission members failed to "provide adequate training, discipline, and supervision of their officers," which constitutes "a willful and wanton indifference and deliberate disregard for the rights of citizens."

On December 3, 2012 Defendants collectively filed their Motion to Dismiss State Law Claims, the Civil Service Commissioners, and Claims for Exemplary Damages Against the City of Aurora (doc. no. 28). This five-page motion is quite narrow in its focus and presents a rather truncated analysis. Defendants first argue that while "the Amended Complaint is not a model of clarity," any claims that Mr. Humood is bringing under state law are subject to dismissal for lack of subject matter jurisdiction based on Plaintiff's failure to comply with the notice requirements imposed under the Colorado Governmental Immunity Act. Defendants then argue that any claims brought against the Defendant Commissioners in their official capacities should be dismissed as redundant in light of the City of Aurora's inclusion as a defendant in this action. Defendants close their motion with two sentences (and two case citations) that argue, without further elaboration, that Plaintiff "cannot recover punitive damages against" the City of Aurora or the Defendant Commissioners in their official capacities. Notably, the Defendants' collective motion does not address the merits of any constitutional or federal claims raised in the Amended Complaint or consider to what extent, if at all, Mr. Humood has properly asserted claims against the City of Aurora under a *Monell* theory of liability.

In his response to Defendants' collective motion, Mr. Humood claims that he "previously filed a written notice on 05/05/2012 with the city of Aurora within the time limits as provided by Colorado Revised Statutes 24-10-109 and the city did not act upon it."  Mr. Humood attached to his Memorandum of Law in Opposition, a copy of his "written notice."  *See* Aurora Police Department Complaint Report (doc. no. 37-1, pages 17 and 18 of 35).  Plaintiff's Memorandum of Law does not appear to address or refute the other arguments raised in Defendants' collective motion, arguing instead that the Defendant Commissioners "are charged with the responsibility of" administering the City's Civil Service system and establishing the qualifications and service requirements for members of the City's Police Department.  In Plaintiff's view, "[t]the Civil Service Commission has failed to adequately monitor and properly train its officers."

Defendant Wilkinson filed a separate Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, In the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (doc. no. 31) on December 3, 2012.  Officer Wilkinson's arguments for dismissal are succinctly presented in four pages of text and raise two separate points.  First, Defendant Wilkinson contends that Mr. Humood has failed to satisfy the pleading requirements enunciated by the Supreme Court because his federal claims are directed against "the Defendants" as a group and do not specify which defendant engaged in the allegedly unlawful conduct.  Second, Defendant Wilkinson argues that Plaintiff's Fifth Claim asserting a conspiracy offers nothing more than conclusory allegations that are devoid of any well-pled facts.

"To the extent that any of Plaintiff's claim survive" dismissal under Rule 12, Defendant Wilkinson seeks summary judgment.  In short, Officer Wilkinson argues, "based on the record," that he did not participate "in the majority of the events alleged" in the Amended Complaint and that Mr. Humood cannot demonstrate that Defendant Wilkinson committed any constitutional

6

violations.  Moreover, Defendant Wilkinson insists he is entitled to qualified immunity since Mr.

Humood cannot demonstrate that any constitutional right he allegedly violated was clearly

established at the time of the conduct at issue.  In moving for summary judgment, Defendant

Wilkinson has tendered several exhibits, including his own affidavit (Exhibit C), an affidavit

(Exhibit D) signed by Sheri Parsons, who accompanied Officer Wilkinson on April 5, 2012 as part

of the Aurora Police Department Citizen Ride-Along program, a narrative report prepared by

Defendant Condreay (Exhibit E) that purports to describe the incident involving Mr. Humood, and a

warrantless arrest report (Exhibit B) also prepared by Defendant Condreay.

Defendant Ponich filed his own Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and

(6) (doc. no. 32) on December 3, 2012.  This motion also challenges Plaintiff's failure to comply

with the notice requirements of the CGIA.  Defendant Ponich further argues that he must be

dismissed because the Amended Complaint is "devoid of any actions by Defendant Ponich which

would support the allegations" or any "factual basis for any violations committed by Defendant

Ponich."  Finally, Defendant Ponich insists that he is entitled to qualified immunity.

As noted, Mr. Humood filed a single response to Defendants' successive motions.  Apart

from reiterating the allegations set forth in the Amended Complaint, Mr. Humood argues that

"police officers Douglas Wilkinson, Jason Condreay and Office (sic.) Ponich were all present

during the arrest incident of the plaintiff with or without probable cause and failed to inform him of

his constitutional rights."  Plaintiff further insists that "each named defendant in the complaint is

directly or indirectly in her or his official capacity involved in the violation of the plaintiff's

constitutional rights" and "[f[urthermore, each police officer named in the complaint has violated

the plaintiff's constitutional rights as individuals and officials acting under the color of law."  Mr.

Humood attached to his Memorandum of Law in Opposition several exhibits, including statements

7

from his clinical psychologist, medical records from the Aurora-Mental Health Center, a record of treatment by a medical practitioner, a set of Rules and Regulations of the Civil Service Commission of Aurora, Colorado, an almost illegible copy of an Offender Tracking Information form, and copies of Aurora Police Department records.[2]

Before addressing the merits of the parties' arguments, some general observations may be appropriate.  First, Defendants correctly characterize the Amended Complaint as less than a model of clarity.  Because Mr. Humood is appearing *pro se*, the court "review[s] [his] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as the *pro se* litigant's advocate); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in that absence of any discussion of those issues").

I also should point out that Defendants' motions and replies were not particularly helpful. Certainly, brevity is a virtue and no court wants to be overwhelmed with prolix motion practice. However, there is a difference between succinct and focused analysis, and "hit and run" or boilerplate motions.  The latter approach effectively requires the court to "connect dots" that may not be readily apparent to even the most discerning reader.  Just as the court should not become an advocate for the plaintiff by anticipating claims that were not actually pled or facts that were not actually alleged, a judicial officer cannot give a defendant the benefit of arguments or analyses that

[2]Portions of the latter records also were offered to support Defendant Wilkinson's motion for summary judgment.

were not actually raised or only addressed in a perfunctory manner.  A boilerplate motion to dismiss is no more effective than a boilerplate complaint.

Finally, I decline Defendant Wilkinson's offer to convert his motion to dismiss into a motion for summary judgment.  Rule 12(d) provides that the court must treat a motion under Rule 12(b)(6) as a motion for summary judgment "if matters outside the pleadings are presented to *and not excluded by the court*."  *See* Fed. R. Civ. P. 12(d) (emphasis supplied).  The court is not required to apply a summary judgment standard simply because one or more parties have submitted outside materials.  *Cf. Christensen v. Big Horn County Board of County Commissioners*, 374 Fed. Appx. 821, 826 (10th Cir. 2010) (noting that the conversion process is not triggered by the mere presence of outside materials, but by the court's *reliance* on such materials).  Ultimately, the decision whether to convert a motion to dismiss is reserved to the court's discretion.  *Sierra Club v. Oklahoma Gas and Electric Co.*, No. 13-CV-356-JHP, 2014 WL 841599, at *1 (E.D. Okl., March 4, 2014).

Under the particular circumstances of this case, I believe that it would be inappropriate to convert Defendant Wilkinson's motion to dismiss into a motion for summary judgment.  The materials proffered by Defendant Wilkinson and Mr. Humood raise as many fact issues as they purport to resolve, particularly with respect to Fourth Amendment claims governed by an objective reasonableness standard.  Unlike a motion to dismiss, which merely challenges the plaintiff's failure to state a claim properly, a motion for summary judgment is designed to test the merits of a claim and may result in a binding final determination against the plaintiff.  I am troubled by the finality of that result, particularly where Mr. Humood's claims are less than clear on their face and the parties have not proceeded with discovery.  *Cf. Cordell v. Howard*, 879 F. Supp. 2d 145, 148-49 (D. Mass. 2012) (holding that conversion of the pending motion to dismiss would deprive the *pro se* plaintiff

of an adequate opportunity to conduct discovery and develop a record in support of his claims);

*Sebrite Agency*, *Inc. v. Platt*, 884 F. Supp. 2d 912, 916 (D. Minn. 2012) (declining to consider materials outside the pleadings where the case was in its infancy, the parties had not engaged in discovery, and disputes would likely turn on the credibility of witnesses).  I am loath to address the factual disputes identified by the parties without the benefit of discovery.  *Cf. Kelly v. Huntington Union Free School District,* 675 F. Supp. 2d 283, 289 (E.D.N.Y. 2009).  Accordingly, I am exercising my discretion and excluding the outside exhibits submitted by Defendant Wilkinson and Mr. Humood, save for the one document referenced below.

## ANALYSIS

*A.     Standards of Review*

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court lacks subject matter jurisdiction.  The determination of subject matter jurisdiction is a threshold question of law.  *Madsen v. United States ex. rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987).  The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992)

> Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking.  A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction.  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

*Stine v. Wiley*, Civ. No. 07-cv-01250-WYD-KMT, 2008 WL 4277748, at *3 (D. Colo. 2008)

(internal quotation marks and citations omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id.*  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 555 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation. *Id.*

> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.

> . . . . Generally, [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, 2009 WL

2924777, at *2 (D. Colo. Sept. 9, 2009) (internal quotation marks and citations omitted).


B.      *Plaintiff's Pleading Deficiencies*

Rule 8(a) of the Federal Rules of Civil Procedure states that a complaint shall contain a

"short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading

requirement is intended to "give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests."  *Leatherman v. Tarrant County Narcotics Intelligence &*

*Coordination Unit*, 507 U.S. 163, 168 (1993).  *See also Blinder & Robinson Co. v. SEC*, 748 F.2d

1415, 1419 (10th Cir. 1984) ("a plaintiff must state a compensable claim for relief that details the

facts forming the basis for the claim").  The pleading requirement in Rule 8, as construed by the

Supreme Court in *Bell Atlantic* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), serves two purposes:

"to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare

an appropriate defense, and to avoid ginning up the costly machinery associated with our civil

discovery regime on the basis of a largely groundless claim."  *Kansas Penn Gaming, LLC v.*

*Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citation and internal quotation marks omitted).  The

former objective is particularly important in § 1983 actions with multiple defendants.

> The [*Bell Atlantic*] standard has greater "bite" in these contexts, "reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest stage of a litigation.'"  Therefore, in § 1983 cases, a plaintiff must "make clear exactly who is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her . . . ."

*VanZandt v. Oklahoma Department of Human Services*, 276 Fed. Appx. 843, 847 (10th Cir. 2008). *See also Robbins*, 519 F.3d at 1250 ("Given the complaint's use of either the collective term "Defendants" or a list of defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (to state a claim in federal court, "a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated").

By referring generically to "the Defendants," Mr. Humood's first five claims for relief  fail to provide sufficient particularity to survive a motion to dismiss.  The court finds these claims and the corresponding allegations are not precise enough to provide each individual defendant with fair notice as to how their particular conduct triggered a specific constitutional, statutory or common law violation.  Mr. Humood's First and Third Claims illustrate the problem.  I assume that the First Claim asserts a Fourth Amendment violation based on "the Defendants'" use of excessive force, while the Third Claim alleges an Fourth Amendment seizure in the absence of probable cause.

The Fourth Amendment's "central requirement" is reasonableness.  *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989) (emphasizing that a seizure "alone is not enough for § 1983 liability; the seizure must be unreasonable") (internal quotation marks omitted).  "[C]ourts have long recognized that the reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished."  *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (citation omitted).  To state a constitutional violation, a plaintiff must allege both that a defendant's conduct constituted a seizure, and that the seizure was unreasonable.  *Kernats v. O'Sullivan*, 35 F.3d

1171, 1177 (7th Cir. 1994).  Mr. Humood cannot make the requisite showing of unreasonable conduct simply by lumping the Defendant Officers into an undifferentiated group.

An excessive force claim also is governed by the Fourth Amendment's "objective reasonableness" standard.  *Plumhoff v. Rickard*, __ U.S. __, 2014 WL 2178335, at *7 (U.S. May 27, 2014).  In assessing an excessive force claim under the Fourth Amendment, the court must consider

> the totality of the circumstances and, in doing so, three considerations are often in play:  "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight."

*Wilson v. City of Lafayette*, 510 Fed. Appx 775, 778 (10th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The court must carefully balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," *Graham*, 490 U.S. at 396, and make that evaluation "from the perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Plumhoff*, 2014 WL 2178335, at *7 (quoting *Graham*, 490 U.S. at 396).  Again, the "reasonable officer" standard must be applied to each Defendant Officer and the factual allegations specific to that particular individual.

Regardless of the constitutional right at issue, liability under § 1983 must be predicated "on a violation traceable to a defendant-official's 'own individual actions.'"  *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("It is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983" claim).  The need for particularized allegations becomes even more critical when one or more defendants raise the defense of qualified immunity.

> To make out viable § 1983 . . . claims *and* to overcome defendants' assertions of qualified immunity, plaintiffs here must establish that each defendant . . . caused a violation of plaintiffs' clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind.  Plaintiffs must do

more than show that their "rights were violated" or that "defendants," as a collective and undifferentiated whole, were responsible for those violations. . . . Failure to make this showing both dooms plaintiffs' § 1983 . . . claims and entitles defendants to qualified immunity.

*Id*. at 1228.  *Cf. Sun v. Bluffton Police Department*, Civ. No. 9:09-2050-RBH-BM, 2010 WL

3786541, at *6 (D. S. C. July 21, 2010) (in applying the qualified immunity doctrine, "the proper

focus is not upon the right at its most general or abstract level but at the level of its application to

the specific conduct being challenged;" the court must consider "the manner in which this [clearly

established] right applies" to the actions of the specific defendant).

　　Plaintiff's pleading deficiencies are particularly problematic for Defendant Ponich.  To

prevail under § 1983, Mr. Humood must allege facts that plausibly demonstrate that each of the

defendants personally participated in the alleged constitutional violations.  *See Henry v. Storey*, 658

F.3d 1235, 1241 (10th Cir. 2011) ("[Section] 1983 imposes liability for a defendant's own actions –

personal participation in the specific constitutional violation complained of is essential.").  To

establish personal participation, the plaintiff must show that the defendant caused the deprivation of

a federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  An individual personally

participates in the deprivation of a constitutional right if (a) he participates directly in the

constitutional violation, (b) he acts or fails to act with reckless disregard of the plaintiff's

constitutional rights, or (c) the conduct that deprived the plaintiff of his constitutional rights

occurred at the official's direction or with his knowledge and consent.  *See Smith v. Rowe,* 761 F.2d

360, 369 (7th Cir.1985).

　　The Amended Complaint alleges that "Defendant Ponich brought Defendant Jason

Condreay to the scene."  *See* Amended Complaint, at ¶ 16.  That is the only reference to Defendant

Ponich in the "Facts" section of the Amended Complaint.  Even when liberally construed, the

Amended Complaint alleges nothing more than Officer Ponich's presence at the scene of the traffic stop for some unspecified period. More to the point, the Amended Complaint does not link Defendant Ponich to any action taken with respect to Mr. Humood. The single statement in Paragraph 16 of the Amended Complaint cannot provide a factual or legal basis for Defendant Ponich's continued participation in this lawsuit.

In recommending dismissal of Mr. Humood's first five claims for relief, this court is not suggesting that the foregoing pleading deficiencies cannot be cured or that Plaintiff could never assert proper claims for constitutional or statutory violations arising from the events of April 5, 2012. Rather, this court finds that the first five claims for relief, as currently pled, fail to state plausible claims for relief pursuant to Rule 8 and well-established Supreme Court and Tenth Circuit precedent. Accordingly, I recommend that Claims One, Two, Three, Four and Five be dismissed without prejudice. I separately find that the Amended Complaint fails to allege sufficient facts to demonstrate any viable claims against Defendant Ponich. For that independent reason, Defendant Ponich should be dismissed from this action.

In light of Plaintiff's failure to properly allege constitutional violations on the part of the Defendant Officers, the court also must recommend dismissal without prejudice of Mr. Humood's Sixth, Seventh and Eighth Claims against the City of Aurora. *See Estate of Larsen ex. Rel Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008) ("without the predicate constitutional harm inflicted by an officer, no municipal liability exists") (citation omitted); *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (same) (citation omitted). *Cf. Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers.") (internal quotation marks and citation omitted); *Ricciuti v. New York City Transit*

*Authority*, 124 F.3d 123, 132 (2d Cir. 1997) ("a claim of inadequate training and supervision under

§ 1983 cannot be made out against a supervisory body without a finding of a constitutional

violation by the persons supervised") (citation omitted);  *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th

Cir. 1996) ("a municipality may not be held liable where there was no underlying constitutional

violation by any of its officers.").

Accordingly, this court recommends that Mr. Humood's constitutional and/or federal

statutory claims be dismissed without prejudice.  Plaintiff should be given a reasonable period of

time to file an amended complaint that fully complies with the Federal Rules of Civil Procedure and

established judicial precedents.

C.      *Plaintiff's State Law Claims*

Defendants have moved to dismiss the Plaintiff's state law claims[3] for lack of subject matter

jurisdiction, arguing that Mr. Humood failed to comply with the notice requirement mandated by

the Colorado Governmental Immunity Act (CGIA), C.R.S. § 24-10-109.  *See City and County of*

*Denver v. Crandall*, 161 P.3d 627, 634 (Colo. 2007) ("The CGIA notice of claim provision is both a

condition precedent and a jurisdictional prerequisite to suit under the CGIA, must be strictly

applied, and failure to comply with it is an absolute bar to suit."); *Fortner v. City of Colorado*

---

[3]It is difficult to determine precisely which of Mr. Humood's claims assert a state law
cause of action.  Plaintiff's Second Claim specifically invokes Title VI, 42 U.S.C. § 2000d; the
Third Claim alleges "a violation of Plaintiff's Fourth Amendment rights under 42 U.S.C. §
1983;" the Fifth Claim contends that Defendants "conspired to violate Plaintiff's statutory civil
rights . . . in violation of 42 U.S.C. § 1983;" and the Sixth and Seventh Claims allude to
"constitutional deprivations suffered by the Plaintiff" or "the violation of Plaintiff's
constitutional rights."  In contrast, the Fourth Claim alleges an "intentional assault and battery"
which appears to be a state common law claim.  Unfortunately, the First and Eighth Claims are
not sufficiently clear to know with certainty whether they are brought under federal or state law,
or both.

*Springs,* 2012 WL 1949000, at *3 (D. Colo. May 30, 2012) (holding that "[c]ompliance with the [CGIA's] notice provision implicates the court's subject matter jurisdiction").  Mr. Humood argues, to the contrary, that he "previously filed a written notice on 05/05/2012 with the City of Aurora within the time limits as provided by Colorado Revised Statutes 24-10-109 and that the city did not act upon it."  As noted above, Plaintiff appended this written notice to his Memorandum of Law in Opposition, as well as his original Complaint.[4]

The Colorado Governmental Immunity Act requires, as "a jurisdictional prerequisite to any action brought under the provisions of [the CGIA]," that any person claiming to have suffered an injury by a public entity or an employee of such an entity, file a written notice that contains the following information:

(a)    The name and address of the claimant and the name and address of his attorney, if any;

(b)    A concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission, or event complained of;

(c)    The name and address of any public employee involved, if known;

(d)    A concise statement of the nature and extent of the injury claimed to have been suffered; [and]

(e)    A statement of the amount of monetary damages that is being requested.

*See* C.R.S § 24-10-109(2).  This written notice must "be filed with the governing body of the public entity or the attorney representing the public entity," and is deemed effective "upon mailing by registered or certified mail, return receipt requested, or upon personal service."  *See* C.R.S. § 24-10-109(3)(a).  To defeat the pending motion, Mr. Humood must demonstrate substantial compliance with the CGIA notice requirement, which in turn requires that he "make a good faith effort to

---

[4]*See, e.g., Aragon v. Erlanger*, Civ. No. 13-cv-01726-RBJ-BNB, 2014 LW 2462553, at *2 (D. Colo. June 2, 2014) (recognizing that a court has "wide discretion" to consider affidavits and other documents in resolving a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); in that limited context, "a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion").

include within the notice, to the extent the claimant is reasonably able to do so, each item of information listed in section  24-10-109(2)."  *See Woodsmall v. Regional Transportation District*, 800 P.2d 63, 69 (Colo. 1990).

As a threshold matter, neither the original Complaint nor Plaintiff's Amended Complaint sets forth any facts that demonstrate or even allude to compliance with the CGIA notice requirement.  Although a plaintiff has the "relatively lenient" burden of demonstrating compliance with the notice requirement, *see, e.g., Tidwell v. City & County of Denver,* 83 P.3d 75, 86 (Colo. 2003), Mr. Humood must plead compliance with the condition precedent of notice or risk dismissal without prejudice.  *Cf. Aspen Orthopedics & Sports, Medicine, LLC v. Aspen Valley Hospital District*, 353 F.3d 832, 841-42 (10th Cir. 2003) (dismissing without prejudice several of plaintiffs' claims for relief where they failed to plead any facts that would demonstrate compliance with the CGIA notice requirements).  *Compare Morgan v. Board of Water Works of Pueblo*, 837 P.2d 300, 302 (Colo. App. 1992) (noting that although plaintiffs did not allege compliance with the notice provision in their original complaint, it was undisputed that plaintiffs mailed "a proper notice of claim" in compliance with § 24-10-109 two weeks after the alleged injuries were sustained; held that where the fact of compliance was established by the evidence, the court properly refused to dismiss based on plaintiff's failure to plead compliance).

Even when I construe the record in the light most favorable to Mr. Humood, I find that he has failed to demonstrate substantial compliance with the CGIA notice requirement.  Plaintiff's reliance on his May 5, 2012 "Aurora Police Department Complaint Report" is misplaced.  That "Complaint Report" does not include "a statement of the amount of monetary damages that is being

requested."[5]  *Compare Dicke v. Mabin*, 101 P.3d 1126, 1131-32 (Colo. App. 2004) (holding that plaintiff had substantially complied with the CGIA notice requirement; although plaintiff's notice did not request a specific dollar amount in damages, it stated that plaintiff's business "has virtually collapsed," that plaintiff had spent "thousands of dollars to defend itself against the unlawful conduct of respondents," and that plaintiff sought compensatory damages in an amount to be determined at trial;" the court also noted that an earlier notice had sought at least $150,000 in damages for related injuries).

Although Mr. Humood may have put the Aurora Police Department on notice of his alleged mistreatment, the CGIA specifically states that the required notice must be received by the "governing body of the public entity or the attorney representing the public entity."  The City of Aurora is a home-rule municipality, *see, e.g.,Trailer Haven MHP, LLC v. City of Aurora,* 81 P.3d 1132, 1137 (Colo. App. 2003), with legislative powers vested in its City Council.  *See* Aurora City Charter, Section 3-9.  Plaintiff has not come forward with any evidence that the Aurora City Council has delegated its governing authority to the Aurora Police Department.[6]

---

[5]Indeed, the only reference to monetary damages in Plaintiff's "Complaint Report" relates to $500 that Mr. Humood claims was in his wallet at the time of his arrest.  According to the "Complaint Report," all Mr. Humood received upon his release from the jail was "$10 without the wallet."  Although the Amended Complaint alleges that Plaintiff suffered "emotional and physical injuries" at the hands of the Defendant Officers and seeks "Fifty Thousand dollars ($50,000) as to each count or cause of action set forth herein," the May 5, 2012 "Complaint Report" does not indicate that Mr. Humood sustained physical or emotional injuries in connection with his arrest.

[6]I note in passing that the internet website maintained by the City of Aurora, Colorado specifically states that individuals wishing to "sue the city of Aurora or any of its employees" must comply with the provisions of the Colorado Governmental Immunity Act and particularly with the notice provision contained at CRS § 24-10-109.  The City's website further states that citizen claims against the City are "handled by the Risk Management Division of Human Resources" and identifies the mail or facsimile address where claims should be sent.  *See* https://www.auroragov.org/CityHall/FilingaClaim/.

More to the point, Plaintiff's "Complaint Report" does not suggest that a lawsuit is reasonably foreseeable or signal a clear intent to initiate civil litigation. *See Mesa County Valley School District No. 51 v. Kelsey*, 8 P.3d 1200, 1204 (Colo. 2000) (the CGIA notice requirement is intended, in part, to allow a public entity "to settle meritorious claims without incurring the expenses associated with litigation, to make necessary fiscal arrangements to cover potential liability, and to prepare for the defense of claims"). "[I]n the context of a tort action against a public entity for personal damages, a claim is a demand for payment of monetary damages." *Id.* ("any documents on which a plaintiff relies to satisfy the requirements of section 24-10-109(1) necessarily must assert a claim by including a request or demand that the defendant entity or employee pay the plaintiff an award of monetary damages"). Mr. Humood's "Complaint Report," to the contrary, simply asked the Police Department to "investigate this matter thoroughly and take the necessary corrective measures against the officers who failed to comply with the law." *Compare Stocks v. City of Aurora*, Civ. No. 13-cv-01141-RBJ-CBS, 2014 WL 1661509, at *3-4 (D. Colo. April 24, 2014) (holding that plaintiffs had substantially complied with the CGIA notice requirement by sending a letter that expressed an intention to sue the City of Aurora and its police officers for violating their constitutional rights and detailed the alleged financial impact of defendants' actions). Quite simply, it appears that Mr. Humood failed to comply with the notice requirement imposed by the Colorado Governmental Act as a condition precedent for subject matter jurisdiction. On that basis, any state law claims that Mr. Humood believes he has asserted in the Amended Complaint must be dismissed.

D.      *Plaintiff's Official Capacity Claims*

By suing the Defendant Officers and the Civil Service Commissioners in their official

capacities, Mr. Humood is actually attempting to impose liability on their employer, here the City of Aurora.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state); *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents"), *abrogated on other grounds by Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2013).  As the court explained in *Davis v. Clifford*,

> A § 1983 claim is properly plead against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity. Naming either is sufficient.  Naming both is redundant.  [O]fficial capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent . . . .  Where a suit contains both entity and official capacity claims, the only defendant is the entity.

No. 13-cv-1642-WJM-KLM, 2014 WL 901608, at *3 (D. Colo. March 7. 2014) (internal quotation marks and citations omitted).  *See also Jones v. Barry,* 33 Fed. Appx. 967, 972 (10th Cir.2002) ("For purposes of §1983, the District of Columbia is treated like a municipality, and [a] section 1983 suit for damages against [District of Columbia] officials in their official capacities is thus equivalent to a suit against the [District of Columbia] itself."); *Rubio v. Turner Unified School District No. 202*, 453 F. Supp. 2d 1295, 1300 (D. Kan. 2006) (dismissing as duplicative or redundant claims brought against individual defendants in their official capacity only where the governmental entity also was a named defendant in the action); *Glasgow v. Independent School District No. 1-29 of McClain County, Oklahoma*, No. CIV-04-254-M, 2005 WL 1258925, at *1 (W.D. Okl. May 25, 2005) (noting that "because the School District has been named as a defendant, any official-capacity suit against these individual defendants is redundant").

Accordingly, claims against the Defendant Officers and the Defendant Commissioners in their official capacities should be dismissed as duplicative of claims brought against the City of

Aurora. *See Villagomez v. Aurora,* Civ. No. 05-cv-02665-WYD-PAC, 2006 WL 1707971, at *1 (D. Colo. June 20, 2006) ("As Plaintiff has already named the City of Aurora as a Defendant, any claims against Defendant Kurian in his official capacity are redundant and should be dismissed.").

E.    *A Future Amended Complaint*

While I am recommending that the Amended Complaint be dismissed without prejudice, I am not discounting Mr. Humood's commitment to this case or his efforts to vindicate what he perceives as violations of his rights. This Recommendation also does not express any opinion as to the ultimate merits of any claim that Mr. Humood has or may bring in the future. However, I am certain that any amended pleading that fails to comply with Rule 8 and established judicial precedents will prompt new motions to dismiss and further delay and expense for all concerned. In the hopes of avoiding that course of action, I offer the following observations.

1.    A Title VI Claim

The current Amended Complaint purports to assert a claim under "Title VI, 42 U.S.C. 2000d" based on Plaintiff's arrest and interrogation without the use of an Arabic interpreter. However, that pleading is devoid of any facts that satisfy the essential elements for a Title VI claim.[7]

---

[7]Mr. Humood's Memorandum of Law asserts, in conclusory fashion, that the Aurora Police Department and the City of Aurora "are receiving government funds" and, therefore, are "mandated to provide for interpreter services in a reasonable manner to people who are considered to be [limited English proficient speakers]." Plaintiff cannot cure the pleading deficiencies in the current Amended Complaint by asserting facts for the first time in a responsive brief. *Cf. Coleman v. Sentinel Transportation, LLC,* Civ. Action No. H-09-1510, 2009 WL 3834438, at *6 n.4 (S.D. Tex. Nov. 16, 2009) (noting that while plaintiff's response brief provided additional factual context for his claims, "[b]ecause those facts are not alleged in the complaint, they are not properly considered in deciding a Rule 12(b)(6) motion challenging the sufficiency of the pleadings").

"Title VI prohibits discrimination on account of race, color, or national origin in all programs and activities receiving federal financial assistance[.]" *Mack v. City of High Springs*, 486 Fed. Appx. 3, at *7 (11th Cir. 2012). To state a claim under 42 U.S.C. § 2000d, however, a plaintiff must come forward with facts to plausibly show that the defendant entity was engaged in racial discrimination and was receiving federal financial assistance.[8] *Earl v. Fresno Unified School District Board of Education*, No. F CV 11-1568-LJO-GSA, 2012 WL 2798806, at *4 (E.D. Cal. July 9, 2012). To survive a motion to dismiss, Mr. Humood must allege facts that plausibly demonstrate he was not allowed to participate in a federally funded program to provide interpreter services. *Cf. Clarke v. Upton*, 703 F. Supp. 2d 1037, 1050 (E.D. Cal. 2010) (holding that the plaintiff failed to state a claim under Title VI where there was no allegation that the county social services department or the county itself was receiving federal financial assistance or that plaintiff was an intended beneficiary of those funds). Moreover, Mr. Humood must come forward with well-pled facts that would show the City of Aurora engaged in intentional discrimination *because of* Plaintiff's national origin. *Cf. Pathria v. University of Texas Health Science Center at San Antonio*, 531 Fed. Appx. 454, 455 (5th Cir. 2013) (holding that plaintiff's "subjective beliefs do not create an inference of intentional discrimination"); *Mack*, 486 Fed. Appx. 3, at *7 (noting that the plaintiff failed to sufficiently allege facts indicating that any of the defendants received federal funds, that he was denied participation in a federally funded program, or that such denial was based on his race, color or national origin).[9]

---

[8] A Title VI claim cannot be brought against a defendant in his or her individual capacity. *See, e.g., Silva v. St. Anne Catholic School*, 595 F. Supp. 2d 1171, 1179 (D. Kan. 2009).

[9] Mr. Humood should also be aware that he can not recover punitive or exemplary damages, *see, e.g., Barnes v. Gorman*, 536 U.S. 181, 189 (2002), or damages for emotional distress under Title VI. *See, e.g., Bell v. Board of Education*, 652 F. Supp. 2d 1211, 1216 (D.

2.      A Fourth Amendment Unlawful Arrest Claim

The instant lawsuit arises out of Mr. Humood's arrest on April 5, 2012.  Defendants' Joint

Status Report (doc. #44) filed on June 3, 2013, indicated that Plaintiff still was facing pending

criminal charges and that a trial had been set for August 2013 in Arapahoe County, Colorado.  The

parties have not advised this court of whether or how Mr. Humood's state criminal charges were

resolved.  Plaintiff has alleged that his Fourth Amendment rights were violated on April 5, 2012

based on his arrest without "reasonable suspicion or probable cause or lawful basis."  Mr.

Humood's ability to pursue a Fourth Amendment claim predicated upon an "unlawful" arrest,

however, may be limited if his state criminal case resulted in a conviction.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a § 1983 action

seeking money damages is not cognizable if a favorable decision would "necessarily imply the

invalidity of [a] conviction or sentence" unless such a sentence has previously been invalidated.  As

the Supreme Court explained:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would render
> a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or called into
> question by a federal court's issuance or a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-7.  "The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its

more lenient pleading rules, to challenge their conviction or sentence without complying with the

more stringent exhaustion requirements for habeas actions."  *Butler v. Compton*, 482 F. 3d 1277,

1279 (10th Cir. 2007) (citation omitted).  "The starting point for the application of *Heck* then is the

existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983

_____

N.M. 2008).

action." *Id.* "In other words, a § 1983 action implicates *Heck* only as it relates to the conviction that it would be directly invalidating." *Id.*

Before Plaintiff asserts an amended § 1983 claim for wrongful arrest in violation of the Fourth Amendment, he should consider whether such a claim could survive a motion to dismiss based on the outcome of his state criminal case. *Cf. Bryner v. Utah*, 429 Fed. Appx. 739, 744 (10th Cir. 2011) (where the plaintiff was alleging that the arresting officers did not have probable cause to believe that he had committed any crime, claim for wrongful arrest was barred by *Heck*).

### 3.   A Fourth Amendment Excessive Force Claim

Defendants did not specifically move to dismiss Plaintiff's excessive force claim, perhaps because such a fact-dependent claim is not easily resolved under Rule 12(b)(6).  But a Fourth Amendment excessive force claim is not without its pitfalls.

As the Tenth Circuit noted in *Koch v. City of Del City*, 660 F.3d 1228, 1246 (10th Cir. 2011), "excessive force claims are governed by the Fourth Amendment's 'objective reasonableness' standard." *Cf. Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir. 2011) (holding that "[a]ll claims that police officers used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its 'objective reasonableness' standard.").  The Fourth Amendment prohibition extends to the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged or unnecessary period of time.  *Los Angeles County, California v. Rettele*, 550 U.S. 609, 614 (2007).

However, police officers are only required to use reasonable means to effect an arrest; the Fourth Amendment does not require that officers use the least intrusive means to detain an arrestee. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005).  In that respect, "not every shove or push during an arrest will give rise to liability" under the Fourth Amendment.  *See, e.g.,*

*Norman v. Frederick*, No. 8:09-cv-02479-JMC, 2011 WL 4008134, at *3 (D.S.C. Sept. 8, 2011);

*McDonald v. Lewis*, No. 05-0173 (PAM/JJG), 2006 WL 2088160, at *3 (D. Minn. July 25, 2006).

"[I]n a handcuffing case 'to recover on an excessive force claim, a plaintiff must show that the

officers used greater force than would have been reasonably necessary to effect a lawful seizure,

and some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or

emotional." *Fisher*, 584 F.3d at 894.   The court in *Fisher* noted that because handcuffing itself is

not necessarily an excessive use of force in connection with an arrest, a plaintiff must allege an

actual non-de minimis injury caused by applying the handcuffs.  *Id.* at 899.

The Amended Complaint merely alleges that Defendant Wilkinson grabbed Plaintiff

forcefully and that Officers Wilkinson and Condreay "violently" pushed Mr. Humood "to the inside

of the police vehicle."  Plaintiff further claims, without elaboration or explanation, that he

"sustained injuries and suffered pain."  If Mr. Humood elects to file another amended complaint, he

should be aware that these generalized allegations may not be sufficient to plausibly state a Fourth

Amendment excessive force claim.

4.   A Conspiracy Claim

Mr. Humood's Amended Complaint alleges a conspiracy under § 1983 to violate his

"statutory civil rights."  To prevail on such a claim, "a plaintiff must plead and prove not only a

conspiracy, but also an actual deprivation of rights."  *Burns v. Holcombe*, No. CIV-11-240-JHP,

2013 WL 3154120, at *12 (E.D. Okl. June 21, 2013) (quoting *Snell v. Tunnell*, 920 F.2d 673, 701

(10th Cir. 1990)).

> Although "direct" evidence of a conspiracy is rarely available and that the existence
> of a conspiracy must usually be inferred from the circumstances . . . , [proof] of
> conspiracy must provide some factual basis to support the existence of the elements
> of a conspiracy: agreement and concerted action.

27

*Id.  See also American Dental Association v. Cigna Corporation*, 605 F.3d 1283, 1294 (11th Cir. 2010) (noting that "allegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy" and "fail to 'nudge . . . claims across the line from conceivable to plausible'").

Mr. Humood has alleged a conspiracy in summary fashion and without any supporting factual allegations.  "However, conclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient."  *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (quoting *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998)).  *Cf. Twombly*, 550 U.S. at 557 (noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality," and "when allegations of parallel conduct are set out . . . they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action").  Plaintiff's next pleading should provide factual allegations that plausibly suggest an agreement by whichever defendants are alleged to be co-conspirators.

5.      An Equal Protection or Due Process Claim

In his Memorandum of Law, Mr. Humood asserts that he was denied access to an interpreter, which "constitutes a violation of the plaintiff's constitutional rights that guarantee due process and equal protection," regardless of a person's fluency or limitations in English.  The current Amended Complaint does not, on its face, expressly assert an equal protection or due process claim.

The fundamental guarantee of the Equal Protection Clause is that "all persons similarly situated shall be treated alike."  *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  The Equal Protection Clause does not forbid classifications, but simply prevents

governmental decision makers from treating differently persons who are in all relevant respects alike. *Juarez v Renico*, 149 F. Supp. 2d 319, 324 (E.D. Mich. 2001). In *Kansas Penn Gaming, LLC v. Collins*, the Tenth Circuit held that a plaintiff wishing to assert an equal protection claim must allege that "others similarly situated in every material respect were treated differently" and that the "difference in treatment was without rational basis, that is, the government action was irrational and abusive and wholly unrelated to any legitimate state activity." 656 F.3d at 1216-19. An equal protection claim requires more than "bare assertions of differential treatment." *Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1149 (10th Cir. 2001), *overruled on other grounds by Pignanelli v. Pueblo Sch. Dist.*, 540 F.3d 1213 (10th Cir. 2008). Cf. *Rocha v. Zavaras*, 443 Fed. Appx. 316, at *3 (10th Cir. 2011) (holding that the plaintiff failed to properly allege a "class of one" equal protection claim where the complaint did not "identify anyone similarly situated who was treated differently").

Mr. Humood's Amended Complaint suffers from the same fatal flaw. Plaintiff simply asserts in conclusory terms that Defendants' failure to provide access to an interpreter violated his constitutional right to equal protection. The Amended Complaint does not indicate in what manner Mr. Humood was treated differently than other arrestees or pre-trial detainees who were similarly situated to him. *Cf. Rylee v. Chapman*, 316 Fed. Appx. 901, 907 (11th Cir. 2009) (holding that the hearing-impaired plaintiff's equal protection claim failed where the facts did not demonstrate that the plaintiff had been treated differently from similarly situated individuals). To paraphrase the Supreme Court's decision in *Bell Atlantic*, a conclusory allegation is not sufficient to "nudge [a] claim across the line from conceivable to plausible." For purposes of a motion to dismiss under Rule 12, it is Mr. Humood's obligation to set forth specific factual allegations that plausibly suggest an equal protection violation. As drafted, the Amended Complaint does not sustain that burden.

Alternatively, Mr. Humood contends that his due process rights were violated because he was not provided the services of an Arabic interpreter. The Due Process Clause of the "Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting the Due Process Clause of the U.S. Const. amend. XIV, sec. 1). However, the Defendant Officers cannot be liable under § 1983 or the Fifth Amendment because they failed to give Mr. Humood *Miranda* warnings.[10] The Supreme Court has held that an arrestee has no constitutional right to receive *Miranda* warnings. *Michigan v. Tucker*, 417 U.S. 433, 444 (1094) (acknowledging that *Miranda* warnings are simply designed to prevent violations of other rights). A police officer does not have liability under § 1983 for failing to provide *Miranda* warnings. *See, e.g., Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1165 n.6 (10th Cir. 2003) (acknowledging that violations of *Miranda* rights do not subject police officers to liability under § 1983); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976) (noting that the *Miranda* decision "does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability"). Moreover, the Due Process Clause does not create a right to have an interpreter present at the point of arrest. *See, e.g., Rivera v. Granucci*, Civ. No. N-87-480 (JAC), 1993 WL 76202, at *7 (D. Conn. March 12, 1993). *Cf. Arum v. Miller*, 331 F. Supp. 2d 99, 111 (E.D. N.Y. 2004) (holding that "no federally protected right provides for the provision of an interpreter" at the time of arrest). *See also United States v. Silva-Arzeta*, 602 F.3d 1208, 1217 (10th Cir. 2010) (while the use of a certified interpreter during interrogation might improve the accuracy

---

[10]By his own admission, Plaintiff "refused to submit to any kind of test or sign any document of which he [didn't] understand the content in English." *See* Amended Complaint, at ¶ 22.

of evidence, the court refused to hold that the use of an interpreter was constitutionally required).

6.     A Claim Against the City of Aurora

Section 1983 does not allow municipalities to be held vicariously liable for the unlawful acts of their employees under *respondeat superior* principles.  *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978); *Garland v. Board of Education of Denver Public Schools Dist. No. 1*, 11-cv-00396-REB-KMT, 2012 WL 1018740, at *8 (D. Colo. Mar. 26, 2012) (Blackburn, J.).  *See also Lawrence v. School District No. 1*, No. 13-1157, 2014 WL 1259588, at *2 (10th Cir. Mar. 28, 2014) (noting that "municipal defendants . . . can't be held liable under 42 U.S.C. § 1983 solely because they employ a person who violated the plaintiff's constitutional rights").  Governmental entities may be liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a policy or custom.  *Monell*, at 690-91, 694.  "Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403-04 (1997).

The legal standards for imposing liability on a municipality under § 1983 are well-established in both Supreme Court and Tenth Circuit precedents.

> [M]unicipal liability under § 1983 attaches where and only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from

"deliberate indifference" to the injuries that may be caused.

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175,1188-89 (10th Cir. 2010)

(internal citations omitted).  *See also Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) ("The

deliberate indifference standard may be satisfied when the municipality has actual or constructive

notice that its action or failure to act is substantially certain to result in a constitutional violation,

and it consciously or deliberately chooses to disregard the risk of harm.").  "Proof of a single

incident of unconstitutional activity is not sufficient to impose liability" under *Monell*, unless proof

of the incident includes proof that it was caused by an existing, unconstitutional municipal policy,

which policy can be attributed to a municipal policymaker."  *Butler v. City of Normal*, 992 F.2d

1053, 1055 (10th Cir. 1993) (also noting that "the failure of a police department to discipline in a

specific instance is an adequate basis for municipal liability under *Monell*").

Moreover, a plaintiff cannot establish liability unless he or she can demonstrate that the

failure to supervise or provide specific training has a causal nexus with the alleged injuries and that

the lack of supervision or specific training "can reasonably be said to reflect a deliberate

indifference to whether the alleged constitutional deprivations occurred.' " *Gilles v. Davis*, 427 F.3d

197, 207 n. 7 (3d Cir. 2005) (quoting *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)).

Thus, in order to succeed on such a claim, it must be proven that the allegedly deficient training or

supervision actually caused the injury.  *Reitz*, 125 F.3d at 145 (citing *City of Canton, Ohio v.*

*Harris*, 489 U.S. 378, 391 (1989)).

Close examination of the Amended Complaint makes clear that the claims against the City

of Aurora cannot stand as presently alleged..  Mr. Humood has not set forth any facts that would

demonstrate either a formal regulation or policy statement promulgated by the City of Aurora or a

"widespread practice" within the Aurora Police Department that was "so permanent and well settled

as to constitute a 'custom or usage' with the force of law," or ratification of the Defendant Officers'

actions by "final policymakers." *Cf. Hill v. Unnamed Arapahoe County Detention Officers*, 2012

WL 899278, at *6 (D. Colo. Mar. 15, 2012) ("[p]roof of a single incident of unconstitutional

activity is not sufficient to impose [municipal] liability" because a single event cannot establish a

custom or a persistent practice) (quoting *Butler v. City of Normal*, 992 F.2d 1053, 1055 (10th Cir.

1993)).  In sum, Plaintiff's current claims against the City of Aurora consists of nothing more than

conclusory allegations.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that: (1) Defendants' Motion to

Dismiss State Law Claims, the Civil Service Commissioners, and Claims for Exemplary Damages

against the City of Aurora (filed December 3, 2012) (Doc. # 28); (2) Officer Douglas Wilkinson's

Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion for Summary

Judgment Pursuant to Fed. R. Civ. P. 56 (filed December 3, 2012) (Doc. # 31); and (3) Motion by

Defendant Ponich to Dismiss Complaint (Doc. 9) Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (filed

December 3, 2012) (Doc. # 32) be granted and that Mr. Humood's Amended Complaint be

dismissed without prejudice.  Plaintiff should understand, however, that any future pleading in this

case must comply with the pleading and substantive standards set forth in the Recommendation.


**Advisement to the Parties**

Within fourteen days after service of a copy of this Recommendation, any party may serve

and file written objections to the Magistrate Judge's proposed findings and recommendations with

the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that

does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

   DATED this 2nd day of July, 2014.

         BY THE COURT:


         s/ Craig B. Shaffer   
         United States Magistrate Judge